**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RITA NEMBHARD,**

                     **Plaintiff,**                  **5:12-cv-881**
                                                **(GLS)**

        **v.**

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                     **Defendant.**

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Shapiro, Kennedy-Smith Law Firm | MAURA A. KENNEDY-SMITH, |
| 120 West State Street | ESQ. |
| Ithaca, NY 14850 | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | JOANNE JACKSON |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe**
**Chief Judge**

**<u>MEMORANDUM-DECISION AND ORDER</u>**

# I. Introduction

Plaintiff Rita Nembhard challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Nembhard's arguments, the Commissioner's decision is affirmed and Nembhard's Complaint is dismissed.

# II. Background

On November 19, 2008, Nembhard filed an application for SSI under the Social Security Act ("the Act"), alleging disability since June 30, 2000.  (*See* Tr.[1] at 61, 119-22.)  After her application was denied, (*see id.* at 62-67), Nembhard requested a hearing before an Administrative Law Judge (ALJ), which was held on August 18, 2010, (*see id.* at 27-60, 68-70).  On September 10, 2010, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review.  (*See id.* at 1-4, 7-22.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript.  (*See* Dkt. No. 8.)

Nembhard commenced the present action by filing her Complaint on May 30, 2012 wherein she sought review of the Commissioner's determination.  (*See generally* Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (*See* Dkt. Nos. 7, 8.)  Each party, seeking judgment on the pleadings, filed a brief.  (*See* Dkt. Nos. 10, 11.)

## III.  Contentions

Nembhard contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.  (*See* Dkt. No. 10, Attach. 3 at 3-13.)  Specifically, Nembhard claims that the ALJ: (1) improperly weighed the medical opinions of record; (2) erred in evaluating her credibility; (3) erred in relying on the testimony of a vocational expert (VE); and (4) rendered a determination that is unsupported by substantial evidence.  (*See id.*)  The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence.  (*See* Dkt. No. 11 at 3-12.)

## IV.  Facts

The court adopts the parties' undisputed factual recitations.  (*See* Dkt. No. 10, Attach. 2 at 2-12; Dkt. No. 11 at 2.)

# V.  Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here.  For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

# VI.  Discussion

## A.    Weighing Medical Opinions

First, Nembhard contends that the ALJ erred in weighing the various medical opinions of record.  (*See* Dkt. No. 10, Attach. 3 at 3-9.)  According to Nembhard, remand is required because the ALJ substituted his own lay opinion for that of competent medical evidence.  (*See id.* at 10-11.)  The court disagrees.

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 416.927(c).  Controlling

_____

[2] Specific reference to 42 U.S.C. § 1383(c)(3) is unnecessary because judicial review under that section is identical to review under section 405(g).

weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 416.927(c). Notably, "'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.'" *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)). Accordingly, "[w]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *Id.* (internal quotation marks and citation omitted).

Here, treating physician Lloyd Darlow opined that, in an eight-hour

workday, Nembhard could sit for two hours at a time, for up to four hours, stand for two hours at a time, for up to four hours, and walk for two hours at a time, for up to four hours. (*See* Tr. at 424.) According to Dr. Darlow, Nembhard could occasionally lift and carry up to five pounds, frequently reach, and never bend, squat, or climb. (*See id.*) Further, Nembhard could not repetitively push or pull with her legs and feet. (*See id.* at 426.) Dr. Darlow based his opinion on Nembhard's decreased range of motion and advanced degenerative disc disease, as revealed in an MRI of her lumbar spine. (*See id.* at 390-91, 403-04, 420.)

Nembhard also underwent a consultative examination in July 2010. (*See id.* at 324-29.) Upon examination, Nembhard's gait was slightly right antalgic, she could not perform a full squat, and she had moderate difficulty rising from a chair, but her stance was normal, she did not use an assistive device, and she did not require help changing for the exam or getting on and off the exam table. (*See id.* at 326.) Nembhard suffered a limited range of motion in her shoulders, right hip, right knee, and right ankle. (*See id.* at 326-27.) Proximal and distal strength was 5/5 on the left upper extremity, but 4/5 on the right side, and she had no sensation to light touch in the entire right upper extremity. (*See id.* at 326.) Straight leg raising

was positive on the right side at fifty degrees, but seated straight leg raising was negative bilaterally. (*See id.* at 327.) With regard to her lower extremities, distal strength was 4/5 on the right side, but 5/5 on the left side. (*See id.*) She suffered no muscle atrophy in her upper or lower extremities. (*See id.* at 326-27.) Based on this examination, and considering x-rays of her lumbosacral spine, which revealed degenerative disc disease at L5-S1, consultative examiner Justine Magurno opined that Nembhard was moderately limited in her ability to walk, stand, and squat. (*See id.* at 328, 330.) According to Dr. Magurno, Nembhard had "moderate to marked" limitations with respect to reaching, pushing, and pulling and marked limitations with respect to lifting, carrying, and bending. (*Id.* at 328.) Finally, Dr. Magurno opined that Nembhard had no limitations with respect to sitting, fine motor activities, speech and hearing. (*See id.*)

The ALJ afforded "little weight" to the opinions of both Drs. Darlow and Magurno because they were "inconsistent with and not supported by the objective medical evidence." (*Id.* at 17.) The ALJ pointed out that Nembhard's daily activities did not support such limitations and stated that Dr. Darlow's opinion appeared to be based on Nembhard's subjective complaints. (*See id.*) According to the ALJ, Dr. Magurno's opinion was

7

"overly pessimistic." (*Id.*)  Ultimately, the ALJ determined that Nembhard retained the residual functional capacity (RFC)[3] to, among other things, lift, carry, push and/or pull twenty pounds occasionally and ten pounds frequently, and, in an eight-hour workday, stand and/or walk for six hours and sit for six hours.  (*See id.* at 14.)  The ALJ also concluded that Nembhard could bend/stoop at waist level occasionally, but not to floor level as to pick up small objects from the floor.  (*See id.*)

Here, in declining to give controlling weight to the opinion of Dr. Darlow, the ALJ explicitly referenced 20 C.F.R. § 416.927 as well as relevant social security rulings.  (*See id*. at 14.)  The ALJ also undertook a thorough assessment of the medical and testimonial evidence of record which suggested impairments less severe than those articulated by Dr. Darlow.  (*See id*. at 16-17.)  Finally, it is evident from the ALJ's direct citation to treatment notes spanning a seventeen-month period, (*see id*. at 16), that the nature and duration of Dr. Darlow's treatment relationship with Nembhard were properly considered.  As it is clear that he properly applied

---

[3] A claimant's RFC "is the most [she] can still do despite [her] limitations."  20 C.F.R. § 416.945(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* § 416.945(a)(3).  An ALJ's RFC determination must be supported by substantial evidence in the record.  *See* 42 U.S.C. § 405(g).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

section 416.927(c), the ALJ did not err in failing to methodically discuss each individual factor, and his assessment of Dr. Darlow's medical opinion is legally sound. *See* SSR 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case.").

Further, it is important to note that the ALJ did not discount the opinions of Drs. Darlow and Magurno wholesale, but rather adopted many of the limitations they prescribed in finding that Nembhard was limited in her ability to sit, stand, walk, climb, crawl, kneel, bend, and stoop. (*See* Tr. at 14.) The ALJ's determination with respect to these functional abilities was supported by the opinions of Drs. Magurno and Darlow as well as Nembhard's activities of daily living. (*See id.* at 14, 328, 424);[4] *Pellam v. Astrue*, No. 12-1412, 2013 WL 309998, at *2 (2d Cir. Jan. 28, 2013) ("[W]hile the ALJ said he reject[ed a consultative examiner's] opinion, . . . the ALJ's ultimate [RFC] determination was consistent with [the consultative examiner's] analysis in all relevant ways.") (internal quotation

_____

[4] Although the ALJ found that Nembhard could sit for six hours out of an eight hour day, as opposed to only four hours as Dr. Darlow opined, Dr. Magurno opined that Nembhard suffered no limitation with respect to sitting, and Nembhard testified that she took long distance trips multiple times in the past year, and was able to use public transportation without difficulty. (*See* Tr. at 14, 50, 53, 328, 424.)

marks and citations omitted)). However, with respect to Nembhard's ability to lift and carry, the ALJ's RFC determination was less severe than the opinions of Drs. Darlow and Magurno indicated. (*See* Tr. at 14, 328, 424.) Nevertheless, even if the ALJ erred in concluding that Nembhard could lift twenty pounds occasionally, at step five of the sequential analysis, the VE explicitly considered the more severe limitations contained in Dr. Darlow's opinion. (*See id.* at 54-56, 58.) Thus, the ALJ's failure to include the more severe lifting limitation in his RFC determination is, at most, harmless error. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration."); *see also Dombrowski v. Astrue*, No. 5:12-cv-638, 2013 WL 528456, at *3 (N.D.N.Y. Feb. 11, 2013). Finally, notwithstanding Nembhard's assertion that the ALJ improperly relied on the state agency disability analyst's opinion, (*see* Dkt. No. 10, Attach. 3 at 8), the ALJ's opinion makes no mention of it whatsoever, (*see* Tr. at 12-18).

Turning to Nembhard's psychiatric impairments, she argues that the ALJ erred in failing to adopt the opinion of state agency review psychologist M. Graff. (*See* Dkt. No. 10, Attach. 3 at 8-9.) According to

Graff, Nembhard suffered a mild degree of limitation in her activities of daily living and social functioning, as well as a moderate degree of limitation in maintaining concentration, persistence or pace. (*See* Tr. at 316.) Graff explained that Nembhard is cognitively intact, not actively suicidal, independent in basic functioning, and has normal thought processes and speech. (*See id.* at 318.) Thus, Graff opined that Nembhard "would be able to perform at least simple work in a low demand setting." (*Id.*) The ALJ gave Graff's opinion "significant weight because it is supported by findings on mental status examination and is generally consistent with the other evidence of record." (*Id.* at 17.) Thus, the ALJ determined that Nembhard is limited to simple, routine, low stress tasks. (*See id.* at 14.)

According to Nembhard, the ALJ erred in failing to include in his RFC determination limitations in certain activities in which Graff opined Nembhard suffered moderate limitation. (*See* Dkt. No. 10, Attach. 3 at 8.) However, despite finding that Nembhard was moderately impaired in certain activities primarily relating to concentration and persistence, Graff ultimately opined that Nembhard was capable of performing work in a low demand setting. (*See* Tr. at 318, 320-21.) Further, in December 2008

psychiatrist John Bezirganian opined that Nembhard suffered no clear

psychiatric disability and, moreover, working a job would be highly

therapeutic.  (*See id.* at 241-44.)  In addition, a diagnostic assessment

completed by licensed master social worker Jessica Massaro indicates that

Nembhard's symptoms improved from November 2008 through February

2010.  (*See id.* at 354-64.)  In May 2010, it was recommended to

Nembhard that she have her medical doctor complete disability paperwork,

due to the fact that a Tompkins County Mental Health Center psychiatrist

would not necessarily recommend "no work," because work can be

therapeutic.  (*Id.* at 371.)  Finally, in March 2010, Nembhard reported a

desire to pursue training and job opportunities.  (*See id.* at 367.)  Thus,

substantial evidence[5] supports the ALJ's determination that Nembhard can

perform simple, routine, low stress work.  (*See id.* at 14.)

**B.**  **Credibility Determination**

Next, Nembhard contends that the ALJ erred in making his credibility

determination.  (*See* Dkt. No. 10, Attach. 3 at 9-10.)  Specifically,

Nembhard argues that the ALJ only considered her activities of daily living,

---

[5] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

and not the other six factors required by 20 C.F.R. § 416.929(c)(3).  (*See id.*)  Further, Nembhard alleges that her activities of daily living are not consistent with the ability to do sustained work activities on a regular basis for eight hours a day, and five days a week.  (*See id.* at 10.)  The Commissioner counters, and the court agrees, that the ALJ properly assessed Nembhard's credibility.  (*See* Dkt. No. 11 at 9-10.)

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry."  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted).  In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements."  SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996).  Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3)

precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 416.929(c)(3)(i)-(vi)).

Here, the ALJ determined that Nembhard's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with his RFC determination. (*See* Tr. at 15.) In making his determination, the ALJ considered the objective medical evidence, the opinion evidence, and Nembhard's activities of daily living. (*See id.* at 14-17.) Specifically, the ALJ noted that Nembhard did not require naps during the day, despite claiming that her medications made her drowsy, is able to take public transportation, does not use a prescribed assistive device when ambulating, and had taken several long-distance trips over the past year. (*See id.* at 15, 17, 44, 50, 53.) Further, the ALJ noted that Nembhard has shown a willingness to work or pursue some sort of training. (*See id.* at 16-17, 367.) In addition to inconsistencies with medical evidence and daily activities, the ALJ discussed Nembhard's physical and psychological

symptoms, and the types and effectiveness of her medication and treatment.  (*See id*. at 14-16, 38, 394.)

Although the ALJ did not undertake a step-by-step exposition of the factors articulated in 20 C.F.R. § 416.929(c), "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record."  *Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) (internal quotation marks and citation omitted); *see Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (stating that the 20 C.F.R. § 416.929(c)(3) factors are included as "'examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding'") (quoting *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546 (S.D.N.Y. 2004)). Here, the ALJ explicitly acknowledged consideration of 20 C.F.R. § 416.929, (*see* Tr. at 14), and it is evident from his thorough discussion that his credibility determination was legally sound.  *See Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal

standard in assessing the claimant's credibility).  Additionally, the ALJ's determination that Nembhard's subjective complaints were not credible to the extent that they suggested impairment greater than the ability to perform "less than a full range of light work . . . limited to simple, routine, low stress tasks" is supported by substantial evidence.  (Tr. at 14.)

## C.   Vocational Expert

Nembhard also contends that the ALJ's reliance on the testimony of the VE was in error.  (*See* Dkt. No. 10, Attach. 3 at 11-12.)  In particular, Nembhard argues that: (1) the hypothetical question posed to the VE was incomplete as it failed to include all of her mental limitations; and (2) the VE's response to the hypothetical was clearly erroneous.  (*See id.*)  The court does not agree.

Although the hypothetical question posed to the VE did not include a verbatim recitation of Graff's limitations, it appropriately encompassed the mental restrictions contained in the ALJ's RFC analysis, which, as discussed above, was supported by substantial evidence.  (*See* Tr. at 14, 55.)  Nembhard argues that she could not perform her past relevant work because it requires "near-constant interaction with the public."  (Dkt. 10, Attach. 3 at 11.)  However, although the ALJ included a limitation on

contact with the public in the hypothetical he posed to the VE, his ultimate RFC determination did not include any such restrictions, and, indeed, Graff opined that Nembhard was not significantly limited in her ability to interact appropriately with the general public. (*See* Tr. at 14, 55, 321.) Accordingly, Nembhard's argument is without merit.

**D.    Substantial Evidence**

Lastly, Nembhard generically argues that the Commissioner's determination is not supported by substantial evidence. (*See* Dkt. No. 10, Attach. 3 at 13.) This argument relies entirely on her claims that the ALJ improperly rejected the medical opinions with respect to her physical capacity, and improperly assessed her credibility. (*See id.*) However, as the court has already found otherwise, it suffices to say that Nembhard's argument is untenable. The ALJ's ultimate determination—that Nembhard had not been under a disability since the time her application was filed—is, therefore, affirmed. (*See* Tr. at 18.)

**E.    Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

**VII.  Conclusion**

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and

Nembhard's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

May 20, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court